DETROIT MORTGAGE CORPORATION *v.* SECRETARY OF STATE.

1. CORPORATIONS — FOREIGN CORPORATIONS — BOARD OF APPEALS — AUTHORITY TO ACT.

Under 2 Comp. Laws 1915, § 9064, the only provision for an appeal from the decision of the secretary of State is where a portion of the tangible property of a foreign corporation is within, and a portion without, the State, and where all of the property of the corporation was within the State the board of appeals was without authority to act.

2. SAME.

Said board of appeals is an administrative body, created to determine facts, but not vested with judicial powers and not authorized to settle legal questions.

3. SAME—FOREIGN CORPORATIONS—ADMISSION IN MICHIGAN—FRANCHISE FEE—VALUE OF STOCK.

Under the law of the State of Delaware (chap. 113, Laws 1917) authorizing the issuance of stock having no fixed value, but providing that for the purpose of franchise fees such stock should be taken to be of the par value of $100 each, such provision is a part of the charter of all corporations organized thereunder, and when a corporation so organized seeks to do business in Michigan such valuation must be taken as the basis for the franchise fee to be paid by it under 2 Comp. Laws 1915, § 9067.

Mandamus by the Detroit Mortgage Corporation, a foreign corporation, to compel Coleman C. Vaughan, secretary of State, to issue a certificate of authority to transact business in this State. Submitted June 22, 1920. (Calendar No. 29,214.) Writ denied July 20, 1920. Re-argued January 18, 1921. Former opinion affirmed February 1, 1921.

*Stellwagen, MacKay & Wade,* for plaintiff.

*Oliver Spaulding,* for defendant.

Plaintiff's business is all conducted and its entire

assets are located in the State of Michigan. It was incorporated May 5, 1917, under the laws of the State of Delaware with 250,000 shares of common stock of the par value of $10 each, and preferred stock of the par value of $2,500,000. It qualified as a foreign corporation to do business in this State. On June 9, 1919, by an amendment duly filed in the office of the secretary of State of Delaware, it increased its preferred stock to the sum of $3,500,000, and provided that its common stock should be of no par value. The laws of the State of Delaware permit the issuance of stock having no par value. The act permitting this to be done among other things provides (Laws of Delaware 1917, chap. 113) :

"In any case in which the law requires that the par value of the shares of stock of a corporation be stated in any certificate or paper, it shall be stated, in respect of such shares, that such shares are without par value, and wherever the amount of stock, authorized or issued, is required to be stated, the number of shares authorized or issued shall be stated, and it shall also be stated that such shares are without par value. For the purpose of the taxes prescribed to be paid on the filing of any certificate or other paper relating to corporations and of franchise taxes prescribed to be paid by corporations to this State, but for no other purpose, such shares shall be taken to be of the par value of one hundred dollars each."

After the amendment to its charter or articles of association plaintiff offered to pay to defendant secretary of State the franchise fee upon the increase of its preferred stock, but declined to pay any further franchise fee as a condition of the issuance of a new license to do business in this State. Defendant, upon the theory that the laws of the State of Delaware became and were a part of plaintiff's charter, declined to accept the franchise fee upon the preferred stock alone, but held that inasmuch as the State of Delaware where

plaintiff was organized had fixed the sum of $100 per share for purposes of franchise fee assessment, payment of a franchise fee upon that basis must be here made as a condition of doing business under the provisions of the act authorizing foreign corporations to transact business in this State (2. Comp. Laws 1915, § 9063, *et seq.*). Plaintiff not being satisfied with the views entertained by the secretary of State appealed to the board of appeal provided for in section 2 of the act (section 9064, 2 Comp. Laws 1915). This board sustained plaintiff's contention. and at the same time ordered defendant to pay back to other foreign corporations which had paid under protest the franchise fees demanded by the secretary of State the excess beyond the amount the board's ruling authorized. The secretary of State declined to accept the ruling of the board and this writ was applied for by plaintiff asking that defendant by mandamus be required to accept the sum of $500 as full payment due the State, to issue a certificate that it had complied with the act in question and is, therefore, entitled to do business in this State, directing the defendant to abide the decision of the board of appeal and to require him to desist from revoking plaintiff's license issued to it upon its first application before the amendment to its charter and which then authorized it to transact business in the State.

FELLOWS, J. (*after stating the facts*). It is apparent from the correspondence and other papers set out in this record that all of the parties including the board of appeal itself misconceived its functions. By section 1 of the act certain information is required to be filed with the secretary of State. Sections 2 and 3 of the act are as follows:

"SEC. 2. From the papers so filed and the facts so reported and any other facts coming to his knowledge

bearing upon the question, the secretary of State shall determine the proportion of the authorized capital stock of the company represented by its tangible property in Michigan. Any such corporation shall have the right on application, to be heard by the secretary of State touching the matter of the determination of the proportion of its capital stock represented by such property used in Michigan. Any, corporation aggrieved by the decision of the secretary of State, may, within ten days, appeal to a board of appeal, consisting of the auditor general, State treasurer and attorney general, whose decision in the matter shall be final.

"SEC. 3. Such company shall pay to the secretary of State a franchise fee of one-half a mill on each dollar of the proportion of its authorized capital stock represented by the tangible property owned and used in Michigan, determined as above provided. And in case such corporation has not at the time of application for admission carried on business at least six months outside of Michigan, it shall pay a franchise fee on its entire authorized capital stock, but such fee shall in no case be less than twenty-five dollars."

It will be noted that under the concluding provision of section 3 foreign corporations situated as plaintiff is, which have not engaged in business outside of the State for six months, are required to pay the franchise fee upon their "entire authorized capital stock," and that by the provisions of section 2 the determination of the secretary of State, which is reviewable by the board of appeal, is a determination of "the proportion of the authorized capital stock of the company represented by its tangible property in .Michigan." The only provision for an appeal is where a portion of the tangible property is within and a portion without the State. In such case the decision of the secretary of State may be reviewed by this board of appeal, an administrative body, created to determine facts but not vested with judicial powers, and not authorized to settle legal questions. The pro-

ceedings of the board of appeal in the instant case were void. Plaintiff gained no rights under them, defendant was not bound by them.

The act in question was designed to regulate the admission of foreign corporations to the State, and to obtain a revenue by requiring as a condition to such admission the payment of a franchise fee. And in providing for the payment of a franchise fee the legislature quite carefully and specifically provided that the fee should be collected upon the *authorized* capital stock of the corporation. This is not a property tax and the value of the corporation's assets do not in any way measure the amount to be paid except in those cases where a portion of the property is within and a portion without the State and then only in determining the "proportion" of its *authorized* capital stock represented by the tangible property within the State. Several States of the Union, Delaware included, have recently passed laws permitting corporations to issue stock having no par value. These laws have been passed since the act in question was originally enacted and we are informed since its last amendment. When one of the corporations so organized submits to defendant its papers, they show upon their face that the stock had no par value; there is nothing upon the face of the papers showing the amount of the authorized capital stock. Defendant by the terms of the act could only grant license to do business here upon the payment of a franchise fee upon their authorized capital. He was therefore confronted with the proposition of refusing his certificate because our statute did not authorize the admission of a foreign corporation so organized with no par value for its stock, leaving to this court the final determination of the correctness of his view, or of looking beyond the papers tendered to find a basis for determining the franchise fee. He chose the latter course. The

question here involved is whether he was correct in his holding.

The State of Delaware could prescribe the terms and conditions under which corporations might be there organized. Such terms and conditions as it saw fit to prescribe regulated and controlled such corporations and became in effect a part of their charters. When by the provisions of the act of the legislature of that State corporations were permitted to issue stock with no par value, there was coupled with such right a proviso that for the purpose of franchise taxes such stock should be taken to be of the par value of $100 each. This provision was as effectively a part of the corporation's charter as though written therein. And when such corporations came to this State seeking admission here the secretary of State was authorized and required to examine all the provisions of their charters for the purpose of following the mandate of the legislature of this State that he collect, as a condition of here transacting business, a franchise fee upon their authorized capital stock. When he so examined such charters he found that the State of nativity of these corporations had fixed a value for taxation purposes of $100 per share. This made a basis for computing the franchise fee and is the only basis for such computation. Unless it may be used as a basis for such computation there is no authority to admit such corporations to do business in this State. We therefore hold that the no par value stock of corporations organized under the laws of Delaware must. for franchise fee purposes be taken to be of the par value of $100 each. The law of Delaware so provides. That law is a part of the charters of corporations organized under it.

In the instant case the plaintiff when originally incorporated in Delaware fixed the par value of its common stock at $10 per share; upon that par value it

paid its franchise fee in this State. When it amended its articles of association to take advantage of the act of the Delaware legislature of 1917, it took with the advantages such disadvantages as the act itself imposed. One of these disadvantages was fixing a value for taxation purposes of $100 per share. It therefore became amenable to section 5 of the act of this State under consideration (section 9067, 2 Comp. Laws 1915), and was required to pay the franchise fee therein provided for.

The writ will be denied.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

ON REHEARING.

PER CURIAM. We granted plaintiff's application for a rehearing in this case. Additional briefs have been filed and the case has been argued orally. After again fully considering the case, we find no occasion to disturb our conclusion or the reasons underlying it.

The writ will be denied.

BROOKE, J., did not sit.