HUMP HAIRPIN MANUFACTURING COMPANY v. EMMERSON, SECRETARY OF STATE OF THE STATE OF ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 139. Argued March 2, 3, 1922.—Decided March 27, 1922.

1. Error of state authorities in treating interstate as intrastate business in computing a corporation excise tax under a statute meant to include the latter only in the computation, goes to the constitutionality of the tax and not of the statute. P. 293.

2. Business done by a corporation through orders approved in a State where its tangible property and business office were located and its manufacturing conducted, but first obtained by its salesmen from residents in other States, *held* interstate. P. 294.

3. Where a state law for taxing foreign corporations for the privilege of doing local business bases the tax upon the capital stock actually represented by property located and business transacted within the State, plainly intending not to tax interstate commerce, and is reasonable as to amount and free from discrimination in favor of local corporations, a tax assessed under it will not be unconstitutional merely because a trifling part resulted from inclusion of interstate business in the basis of computation. P. 295.

293 Ill. 387, affirmed.

ERROR to a judgment of the Supreme Court of Illinois in a suit brought by the plaintiff in error to recover the amount of a tax.

*Mr. Colin C. H. Fyffe* for plaintiff in error.

*Mr. Clarence N. Boord,* with whom *Mr. Edward J. Brundage,* Attorney General of the State of Illinois, was on the brief, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

In 1918 the defendant in error, as Secretary of State, assessed a tax of $6,045 upon the plaintiff in error, a corporation organized under the laws of West Virginia, for the privilege of doing business in the State of Illinois. The tax was paid under protest and this suit was instituted to recover the amount of it, based upon the contention that the statute under which it was imposed offends against the Federal Constitution for various reasons, the only one argued in this court, however, being that, if given effect, it will constitute a regulation of, and impose a direct burden upon, interstate commerce.

The case was tried on stipulated facts, from which we derive these as essential to a disposition of it.

9544°—23——22

In 1918 the authorized capital stock of the company was $6,000,000, of which $5,500,000 was reported by the company to the State as paid in and issued. It was a manufacturing corporation, with all of its tangible property in Illinois. Its method of doing business was to send salesmen into Illinois and the various other States to solicit orders, which, however, were not accepted until approved at the Chicago office, after which they were filled from stocks maintained in that city. The company represented the potential value of its patent rights, licenses, trademarks, secret processes and good will as $5,124,126.72, and the total value of its real and personal property as $416,629.07,—making a total in Illinois of $5,540,755.79. It also represented the total sales made by it in 1917, on which year's business the tax was computed, as $263,334.96, and of these $25,814 were made to residents of Illinois.

The statute under which the tax was assessed reads:

" It shall be the duty of the Secretary of State to propound interrogatories from time to time to officers of such foreign corporations [with negligible exceptions] doing business in this State to ascertain the proportion of capital stock actually being represented by property located and business transacted in the State of Illinois, which proportion shall be determined by averaging the percentage of the total business of the corporation transacted in Illinois with the percentage of the total tangible property located in this State." (Hurd's Statutes, 1917, p. 719, § 67 fb.)

In a recent case, *American Can Co.* v. *Emmerson,* 288 Ill. 289, the Supreme Court of Illinois held that it has been the policy of that State since 1872 to accord precisely equal treatment to domestic and foreign corporations of like character (Hurd's Statutes, 1917, p. 703, § 26,) and that the fees for transacting business in the State are computed on the amount of the authorized capital stock

of domestic corporations and, at the same rate, on the amount of the capital stock of foreign corporations actually " represented by property located and business transacted " in the State, as determined by the Secretary of State under the statute. The basis for the computation was $50 for the first $5,000, and $1 upon each $1,000 over that amount.

Acting under these statutes, the Secretary of State concluded that, under the facts as we have stated them, all of the business of the company was " transacted " in the State of Illinois and, all of the tangible property of the company being in the State, he computed the tax on the entire authorized capital stock. The State Supreme Court sustained the assessment as valid.

The contention of the plaintiff in error in this court is that, notwithstanding the manner in which it was done, the business which the company did with residents of States other than Illinois was interstate business and that the treating of the amount of it as a part of the business of the company transacted in that State in determining the percentage of the total business of the corporation transacted therein, renders the act under which the computation was made unconstitutional and void for the reason that the tax assessed is a burden upon interstate commerce.

Plainly this contention cannot be sustained. The statute and the state Supreme Court both show a candid purpose to differentiate state from interstate business and to use only the former in determining the amount of the disputed tax. If the Secretary of State or the court, in computing the tax, erroneously treated as intrastate that which was really interstate business, such error would be reason in a proper case for correcting the computation, but would not justify declaring the act unconstitutional. The facts, that all of the property of the company was located in Illinois, that all of its manufacturing operations

were conducted in that State, and that all contracts of sale must be approved at Chicago, where the only business office of the company was maintained, certainly reduce the interstate element in its business to the lowest terms, but, nevertheless, we are constrained to hold that the business done with residents of States other than Illinois is interstate business, and therefore, there remains the question, Whether the use made of the amount of such interstate business, in determining the amount of the tax, renders it invalid?

While a State may not use its taxing power to regulate or burden interstate commerce (*United States Express Co.* v. *Minnesota,* 223 U. S. 335; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135), on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 343; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Kansas City, Memphis & Birmingham R. R. Co.* v. *Stiles,* 242 U. S. 111; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 326–327. The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon

it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it.

No formula has yet been devised by which it can be determined in all cases whether or not such a tax is valid, and, applying the repeated declaration of this court, in the cases cited and in many others, that the question is inherently a practical one, depending for its decision on the special facts of each case, we are clear that the tax here involved falls within the excepted class described, even though the business done with residents of States other than Illinois be regarded as interstate.

Clearly the statute is not a disguised attempt to tax interstate commerce. On the contrary, its purpose plainly is to differentiate state from interstate business and to impose the tax only on the former. Construed with other statutes the act accords equal treatment to domestic and foreign corporations, and clearly in this case property of the company beyond the jurisdiction of the State is not taxed—all of its property is in Illinois. To require foreign corporations to pay for the privilege of doing business in a State is, of course, a familiar and often approved form of taxation, and in this case the fee imposed is reasonable in amount.

The tax is not imposed directly upon the proceeds of interstate commerce and is not computed upon it. The $235,000 of interstate business of the company is only one of three factors used in estimating or measuring "the amount of the capital stock represented by property and business transacted in Illinois," upon which the privilege tax in dispute was computed. The other two factors were $5,540,000 of property in Illinois and $25,000 of business stipulated as done with residents of that State. If the fee or privilege tax were computed at the statutory rate on the whole of the interstate business, it would be trifling in amount, but if computed on the property admitted to

have been in use in the State it would be but slightly less than the tax collected.

If this same amount of tax had been imposed upon such a manufacturing corporation as we have here without reference being made to the basis of its computation, very certainly no objection to its validity would have been thought of (142 U. S. *supra*, p. 229). Or if the State had imposed an income tax, a part of which would have been derived from the net profits on this same interstate business, no valid objection could have been made to it. (*United States Glue Co.* v. *Oak Creek, supra.*) At most the assessment, so far as interstate commerce is concerned, is incidental, remote and unimportant and it is therefore constitutional. The judgment of the Supreme Court of Illinois must be

*Affirmed.*

Mr. Justice Van Devanter dissents.

Mr. Justice McReynolds concurs in the result.