## EDUCATIONAL FILMS CORPORATION OF AMERICA v. WARD, Atty. Gen. of New York, et al.

District Court, S. D. New York.

June 2, 1930.

Roger Hinds, of New York City (Benjamin P. Dewitt, Siegfried F. Hartman, and Roger Hinds, all of New York City, of counsel), for plaintiff.

Hamilton Ward, Atty. Gen. (Wendell P. Brown, Third Asst. Atty. Gen., of counsel), for defendants.

Before CHASE, Circuit Judge, and BONDY and WOOLSEY, District Judges, convened pursuant to section 266 of the Judicial Code (28 USCA § 380).

CHASE, Circuit Judge (after stating the facts as above).

The power of a State to impose a tax on the franchise of a corporation doing business therein is too well established for discussion, Kansas City, Fort Scott & Memphis Ry. Co. v. Botkin, 240 U. S. 227, 232, 36 S. Ct. 261, 60 L. Ed. 617; and it is equally well settled that, except under conditions discussed below, the net income of a corporation may be used to measure a tax on the privilege of doing business in corporate form, even though such income does in part come from property exempt from taxation by the same taxing power, Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; that the excess of the market value of capital stock over the value of certain specified property behind it may be used by a state as the measure of the tax, although the market value was enhanced by United States bonds held by the corporation, Hamilton Mfg. Co. v. Massachusetts, 6 Wall. 632, 18 L. Ed. 904; that a state may tax the franchise of a savings bank and use as the measure a percentage of its deposits on a day certain, though part of such deposits were actually then invested in tax exempt federal securities, Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897; see, also, Provident Institution for Savings v. Massachusetts, 6 Wall. 611, 18 L. Ed. 907; that the tax may be measured by dividends made or declared, although such dividends had their source in part in capital invested in United States bonds, Home Insurance Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025; that it may be measured by the amount of paid-up capital stock which may represent in part non-taxable property, Kansas City, etc., R. Co. v. Botkin, supra.

In United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 328, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, it was held that income derived from interstate commerce might be directly reached under an income tax law which did not discriminate against such commerce. See, also, Hump Hairpin Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 120, 41 S. Ct. 45, 65 L. Ed. 165; and International Shoe Co. v. Shartel, 279 U. S. 429, 49 S. Ct. 380, 73 L. Ed. 781. State inheritance taxes were held to be lawfully measured by including the value of United States bonds in Blodgett v. Silberman, 277 U. S. 1, 12, 48 S. Ct. 410, 72 L. Ed. 749; and in Plummer v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998, a legacy tax on a bequest consisting wholly of United States bonds was upheld. See Orr v. Gilman, 183 U. S. 278, 22 S. Ct. 213, 46 L. Ed. 196.

Since Long v. Rockwood, 277 U. S. 142, 48 S. Ct. 463, 72 L. Ed. 824, however, it cannot be thought that a state may tax directly income from patents or copyrights. While a copyright is not such a federal instrumentality as is a bond, for instance, sold for the purpose of raising funds for the support of government itself, it results from the exercise of a right or privilege to grant copyrights, given exclusively to the United States by the Constitution, and the value to the government of this right or privilege may not be lessened or destroyed by taxation imposed by a state upon the thing created through federal enjoyment of this exclusive privilege.

In Northwestern Mutual Life Insurance Co. v. Wisconsin, 275 U. S. 136, 48 S. Ct. 55, 72 L. Ed. 202, a tax was held invalid because it was in effect imposed upon exempt prop-

erty, rather than upon the franchise, of the corporation by making the measure of the tax gross returns rather than net receipts. The substantial distinction between these two methods was noted and will be found pointed out at some length in United States Glue Co. v. Oak Creek, supra, at pages 328, 329 of 247 U. S., 38 S. Ct. 499. In Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, income from oil leases on Indian lands was held nontaxable directly as income because the principal was absolutely exempt, but no question of the measure of a privilege or excise tax was involved; and in Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, it was held that to tax a dealer selling gasoline upon the number of gallons sold and to include therein gasoline purchased by the United States was in effect a tax upon the federal government by so much as the cost to it of gasoline so purchased was increased. Yet this case involved a tax on "any person engaged in the business of distributing gasoline," and stands, like the two just previously mentioned, as one where measuring a corporate franchise tax by net income was not in issue.

■ It cannot be doubted that this tax is not directly on income but is purely an excise. Speaking of this very statute, in Bass, Ratcliff & Gretton, Ltd., v. State Tax Commission, 266 U. S. 271, 45 S. Ct. 82, 83, 69 L. Ed. 282, on a point quite apart from the issue now presented, after agreeing with the New York Court of Appeals that the tax is "primarily a tax levied for the privilege of doing business in the State," it is said that: "It is not a direct tax upon the allocated income of the corporation in a given year, but a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year. See New York v. Jersawit, 263 U. S. 493, 496, 44 S. Ct. 167, 68 L. Ed. 405."

Were it not for Macallen Co. v. Massachusetts, 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 874, we should have no hesitation in reaching the conclusion that in imposing this tax a constitutionally permissible method of

measurement has been used. And that decision, though much relied upon by the plaintiff, does not seem to change the general principle developed in the decisions above referred to, but tends to mark the limits of what is mere casual effect upon tax exempt property which will be tolerated in recognizing and trying to overcome the practical difficulties confronting two governments, state and nation, in raising revenue within the same geographical area.

■ It is urged that the same situation is presented here as was in the Macallen Case, but we think not. After the New York Court of Appeals in People ex rel. Standard Oil Co. v. Law et al., 237 N. Y. 142, 142 N. E. 446, held in 1923 that gross income from which deductions were to be made for purposes of state corporate franchise taxation was the same as gross income determined in accordance with the federal law, and included no interest on federal securities which were within the exception of "subdivision 4 of section 213(b)" (USCA, title 26, § 954(b)(4), the Legislature in April, 1924, amended the law by adding, inter alia, in section 209, Tax Law (chapter 329, § 2, Laws N. Y. 1924), the words "plus * * * any interest received * * * on bonds of any character." Again, in 1927 (Laws N. Y. 1927, c. 479, § 1), the law was amended to "include income from any source, provided only that the assets from which the income arose shall be included in any segregation for the purpose of computing the tax." We think it now beside the point that the New York law as amended may, in so far as interest on federal bonds is concerned, be the result of motives not unlike those responsible for the Massachusetts law held invalid in the Macallen Case. That question is not before us. Copyright income was not excluded from gross income in the exception in the federal law referred to in People ex rel. Standard Oil Co. v. Law et al., supra. Now, as before, it enters into the measure of the franchise tax purely as a casual incident of that tax. Accordingly we have reached the conclusion that this bill of complaint states no cause of action.

Injunction denied, and bill dismissed.